## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

DAVID ROHAN BALDEO,
an individual,

                               Case No.:

      Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
AARGON AGENCY, INC.,
a foreign for-profit corporation,

      Defendants.

_____/

## COMPLAINT

    **COMES NOW**, Plaintiff, DAVID ROHAN BALDEO (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and AARGON AGENCY, INC. (hereinafter, "Aargon") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

    1.    This is an action for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Experian unlawfully reported erroneous and fictitious information on Plaintiff's personal consumer credit reports and credit files belonging to a third-party with a first name and last name similar to Plaintiff and continued reporting such false and

inaccurate information after Experian received a dispute from Plaintiff.

2.      Furthermore, this is an action brought by an individual consumer for damages for Aargon's violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 ("FDCPA") and the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Aargon improperly credit-reported and subsequently verified its credit reporting of erroneous and fictitious information (hereinafter collectively, "the Accounts") on Plaintiff's personal consumer credit reports and credit files belonging to a third-party with a first name and last name similar to Plaintiff on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Experian.

### JURISDICTION, VENUE, AND PARTIES

3.      Jurisdiction of this Court arises under 28 United States Code, Section 1331, as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq* and the Fair Debt Collection Practices Act, 15 United States Code, Section 1692, *et seq.*

4.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District, and the events described herein occur in this District.

5.      Venue is proper in this District as the acts and transactions described herein occur in this District.

6.      At all material times herein, Plaintiff is a natural person residing in Palm Beach County, Florida.

7.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.      At all material times herein, Aargon is a foreign for-profit corporation existing under the laws of the state of Nevada with its principal place of business located at 8668 Spring Mountain Road #110, Las Vegas, Nevada 89117.

## FCRA STATUTORY STRUCTURE

9.      Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

10.     The FCRA limits access to a consumer's credit report for certain limited permissible purposes. *See* 15 United States Code, Section 1681b(a).

11.     Under the FCRA, a person shall not use or obtain a consumer report for any purpose unless the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under the FCRA, and the purpose is certified in accordance with the FCRA, Section 1681e. *See* 15 United States Code, Section 1681b(f).

12.     Additionally, under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum*

*possible accuracy* of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b) (emphasis added).

13. Any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer, is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; statutory damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

14. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer, is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## FCCPA AND FDCPA STATUTORY STRUCTURE

15. The FDCPA is a federal statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e).

16. The FDCPA imposes civil liability on any debt collector who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and prohibits engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6).

17.     Specifically, the FDCPA prohibits unlawful debt collector from using "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692(e).

18.     For example, the FDCPA prohibits a debt collector from threatening to communicate or communicating to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.  *See* 15 U.S.C. §§ 1692e(8).

## GENERAL ALLEGATIONS

19.     At all material times herein, Plaintiff is a "consumer" as defined by 15 United States Code, Section 1681a(c) and by 15 United States Code, Section 1692a(4).

20.     At all material times herein, Defendants are each a "person" as defined by 15 United States Code, Section 1681a(b).

21.     At all material times herein, Aargon is a "debt collector" as defined by 15 United States Code, Section 1692a(6).

22.     At all material times herein, Aragon, itself and through its subsidiaries, regularly services medical debt accounts—and credit reports information associated with the same—allegedly owed by consumers residing in Palm Beach County, Florida.

23.     At all material times herein, Aargon is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

24.     At all material times herein, Aargon reports information concerning

erroneous and fictitious information in the form of a collection account on Plaintiff's personal consumer credit reports and credit files belonging to a third-party, referenced by account number beginning 28- (hereinafter collectively, the "Account").

25.     At all material times herein, Aargon attempts to collect an alleged balance owed on the Account from Plaintiff.

26.     At all material times herein, the alleged balance owed on the Account is a consumer debt, an obligation resulting from transactions for goods or services incurred primarily for personal, household, or family use.

27.     At all material times herein, Aargon's conduct, with respect to the Account, qualifies as a "communication" as defined by the FCCPA and the FDCPA.

28.     At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in his name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made using the Account.

29.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.

30.     Experian disburses such consumer reports to third parties under contract in return for monetary compensation.

31.     At all material times herein, Defendants act themselves or through their

respective agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

32.     All necessary conditions precedent to the filing of this action occurred, or Defendants voluntarily waived the same.

## FACTUAL ALLEGATIONS

33.     Prior to November 2021, Plaintiff was employed by the Wellington Regional Medical Center located in Wellington, Florida.

34.     However, Plaintiff was not employed by Wellington Regional Medical Center any time after November 2021.

35.      In or around January 2022, Plaintiff's father, also named David Baldeo, received medical services at the Wellington Regional Medical Center located in Wellington, Florida and incurred debts associated with such medical services.

36.     At no point did Plaintiff personally receive medical services from the Wellington Regional Medical Center located in Wellington, Florida, nor did Plaintiff agree to pay or be held responsible for his father's bills associated with the services his father received.

37.     Prior to November 2023, Plaintiff obtained copies of his credit disclosure reports, including his Experian report.

38.     At that time, Plaintiff noticed more than one collection account for medical debts that did not belong to Plaintiff and instead belong to Plaintiff's father.

39.     Soon after, Plaintiff disputed Experian's reporting of the medical collection accounts, and Experian deleted its reporting of such medical collection accounts.

40.     However, on or about November 21, 2023, Plaintiff obtained an updated copy of his credit disclosure report as maintained by Experian.

41.     Despite not personally receiving services from Wellington Regional Medical Center, despite not agreeing to pay or be held responsible for his father's medical bills, and despite Plaintiff previously disputing Experian's reporting of medical collection accounts that do not belong to Plaintiff, Experian reported two (2) *different* collection accounts on Plaintiff's Experian credit report associated with medical services Plaintiff's father received from Wellington Regional Medical Center. Please see attached true and correct copies of relevant pages from Plaintiff's Experian credit report labeled as **Exhibit "A."**

42.     More specifically, Experian reported a collection account furnished by Aargon, identified via account number beginning 28-, with Wellington Regional Medical Center as the original creditor, as late and with a past-due balance, resulting in the account appearing as a negative and derogatory account on Plaintiff's Experian reports.

43.     Similarly, Experian reported a collection account furnished by Ability Recovery Service, identified via account number beginning D1-, with Emergency Specialists of Wellington, LLC as the original creditor, as late and with a past-due

balance, resulting in the account appearing as a negative and derogatory account on Plaintiff's Experian reports.

44.     Importantly, the collection accounts reported by Experian, Aargon, and Ability Recover Service were the only negative or derogatory accounts appearing on Plaintiff's Experian credit report as of November 2023.

45.     Again, Plaintiff was not personally liable for the above-referenced Aargon and Ability Recovery Service accounts as he did not agree to pay or be held responsible for his father's bills associated with the services his father received.

46.     On or about January 3, 2024, and with the assistance of his attorneys, Plaintiff sent letter to Experian both disputing Experian's reporting of the collection accounts because they did not belong to Plaintiff and requesting that Experian remove the erroneous from Plaintiff's Experian credit reports (hereinafter, "Plaintiff's First Dispute").  Please see attached a true and correct copy of Plaintiff's First Dispute labeled as **Exhibit "B."**

47.     In support of his dispute, Plaintiff enclosed a copy of his Florida Driver's License and pages from his Experian credit report showing the two (2) collection accounts that did not and do not belong to Plaintiff.  *See* Ex. B.

48.     Experian received Plaintiff's First Dispute.

49.     Experian communicated Plaintiff's First Dispute to Aargon.

50.     Aargon received notice of Plaintiff's First Dispute from Experian.

51.     On or about January 23, 2024, Experian sent a letter to Plaintiff in

response to Plaintiff's First Dispute. Please see attached a true and correct copy of Experian's response to Plaintiff's First Dispute labeled as **Exhibit "C."**

52.     Notably, Experian and/or Ability Recovery Service deleted the collection account reported by Ability Recovery Service.  *See* Ex. C.

53.     However, despite Plaintiff's First Dispute, despite Experian and/or Ability Recovery Service deleting the collection account reported by Ability Recovery Service, and despite Experian previously deleting accounts that do not belong to Plaintiff following a dispute to Experian,  Defendants both purportedly "verified" their reporting of the Aargon collection account (i.e. the Account) and continued to report the Aargon Account as late and past-due in the amount of $3,480.  *See* Ex. C; *see also* attached true and correct copies of relevant pages from Plaintiff's Experian credit report as of January 23, 2024 labeled as **Exhibit "D."**

54.     As soon as Aargon received notice of Plaintiff's First Dispute from Experian, Aargon thereafter received and possessed knowledge that Plaintiff was not the individual responsible for the Account balance and therefore should have known that it was reporting false information to Experian.

55.     As such, by "verifying" its reporting of the Account to Experian, Aargon communicated credit information to Experian regarding Plaintiff that Aargon knew to be false or should have known to be false.

56.     Further, by "verifying" its reporting of the Account to Experian, Aargon communicated in an attempt to collect an alleged balance on the Account from

Plaintiff.

57.     Importantly, the collection account reported by Experian and Aargon was the only negative or derogatory account appearing on Plaintiff's Experian credit report as of January 2024.

58.     On or about February 15, 2024, and because Defendants did not correct their reporting errors following Plaintiff's First Dispute, Plaintiff sent a second letter to Experian, again with the assistance of his attorneys, requesting that Experian remove the Aargon Account from Plaintiff's Experian credit report because it does not belong to Plaintiff (hereinafter, the "Plaintiff's Second Dispute").  Please see attached a true and correct copy of Plaintiff's Second Dispute labeled as **Exhibit "E."**

59.     On or about February 27, 2024, Experian notified Plaintiff via email that Experian received Plaintiff's Second Dispute Letter, and that Plaintiff would soon receive Experian's dispute results.

60.     However, Plaintiff never received results from Experian regarding Plaintiff's Second Dispute.

61.      On or about April 2, 2024, and because Plaintiff never received dispute results from Experian, Plaintiff obtained his credit disclosure report as maintained by Experian.

62.     As of April 2, 2024, Experian and/or Aargon had finally deleted and/or suppressed the Aragon Account from Plaintiff's credit report and credit file.

63.     Clearly, Defendants could have and should have deleted their reporting

of the Aargon Account in response to Plaintiff's First Dispute because the Ability Recovery Service account was deleted following the First Dispute and Defendants finally deleted their reporting of the Aargon Account following Plaintiff's Second Dispute.

64.    In 2023 and 2024, Experian generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders and such credit reports included Experian's erroneous reporting of the Aargon Account and/or the collection account furnished by Ability Recovery Service.

65.    More specifically, in 2023 and 2024, Experian generated and published Plaintiff's credit reports to Comenity Bank, Credence Resource Management, JPMorgan Chase Bank, Lending Club, Progressive Insurance, and Wells Fargo Card Services, in addition to others.

## DAMAGES

66.    Defendants' conduct constitutes a knowing and willful decision to report erroneous information belonging to a third-party on Plaintiff's consumer credit reports, as the above-referenced erroneous information—including an erroneous collection accounts—unequivocally indicates that such personal information and trade-line information resulted from a mixed credit file with another person and should not be reported on Plaintiff's credit reports.

67.    In today's age of digital piracy, the safekeeping of one's personal and sensitive information—such as addresses, telephone numbers, account numbers, and

social security numbers—are of paramount importance.

68.     Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

69.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

70.     The FDCPA provides for the reward of up to $1,000.00 statutory damages, actual damages, an award of attorneys' fees, and an award of costs to Plaintiff, should Plaintiff prevail in this matter against Aargon.

71.     Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the erroneous Account.

72.     Plaintiff suffered additional actual damages in the form of damage to his credit reputation, higher credit costs, and Plaintiff refrained from applying for new credit for fear that he would be denied because of the objectively inaccurate reporting referenced herein.

73.     Furthermore, Plaintiff suffers ongoing actual damages because he fears that Experian will again allow information to appear on Plaintiff's credit reports in the future that does not belong to Plaintiff, as Experian has already done on multiple

occasions.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(as to Aargon only)**

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

74.     Aargon is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's dispute, failing to review all relevant information regarding the same, and failing to request that Experian delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's First Dispute.

75.     More specifically, as described above, Plaintiff was not and is not personally liable for the Account, because: (i) Plaintiff did not obtain the medical services forming the basis for the Account; and (ii) Plaintiff did not agree to be responsible for the balance arising from those medical services.

76.     Despite Aargon receiving notice of Plaintiff's First Dispute from Experian, which clearly advised Aargon that Plaintiff was not responsible for the Account and that the Account belonged to a different individual, Aargon willfully and/or negligently failed to request that Experian delete the tradeline associated with the Account and continued to report the inaccurate information to Experian including a past-due balance on the Account in the amount of $3,480.

77.     Rather than delete its reporting of the illegitimate Account after receiving notice of Plaintiff's First Dispute, Aargon inaccurately "verified" or "updated" its erroneous and fictitious reporting of the Account which ultimately reflected negatively and adversely on Plaintiff's credit reports and credit files as maintained by Experian.

78.     Notably, Experian and/or Ability Recovery Service deleted the Account from Plaintiff's Experian credit reports in response to Plaintiff's First Dispute, based on the identical information provided to Aargon through Plaintiff's First Dispute.

79.     Aargon's refusal to request that Experian delete the tradeline associated with the Account was intentionally, willfully, and knowingly done as Aargon clearly possessed knowledge that the Account did not belong to Plaintiff, but instead, belong to a third-party.

80.     Aargon's re-investigations were not conducted in good faith.

81.     Aargon's re-investigations were not conducted reasonably.

82.     Aargon's re-investigations were not conducted using all information and documents reasonably available to Aargon.

83.     As a result of Aargon's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed she would not be able to obtain favorable credit terms as a result of Aargon's erroneous and fictious reporting of the Account, did not wish to

further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account as a collections account which ultimately reflected negatively and adversely on Plaintiff's credit reports and credit files as maintained by Experian.

84.     Aargon's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

85.     Aargon's violations of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT TWO:
## FAIR DEBT COLLECTION PRACTICES ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e(8)</u>
### (as to Aargon only)

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

101.    Aargon is subject to, and violated the provisions of, 15 United States Code, Section 1692e(8) by threatening to communicate or communicating to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

102.    More specifically, Aargon reported the Account belonging to a third

party on Plaintiff's credit report despite Plaintiff not owing the underlying debt balance.

103.    Plaintiff disputed Aargon's reporting of the Account to Experian, wherein Plaintiff advised that he was not the individual responsible for the Account and that it belonged to a third-party, and Aargon received Plaintiff's dispute via Experian.

104.    Therefore, upon receiving Plaintiff's First Dispute via Experian, Aargon possessed knowledge that Plaintiff was not the individual responsible for the Account and possessed knowledge that Aargon's reporting of the Account on Plaintiff's Experian report was inaccurate.

105.    Despite Aargon possessing the immediately-aforementioned knowledge, Aargon "verified" its reporting of the Account to Experian wherein Aargon communicated that Plaintiff was personally responsible for the balance owed on the Account in the amount of $3,480.

106.    Experian communicated Aargon's credit reporting to Plaintiff via Experian's dispute results.

107.    Therefore, Aargon communicated credit information to Experian concerning Plaintiff that Aargon knew was false or should have know was false.

108.    As such, Aargon violated the FDCPA, Section 1692e(8).

109.    As a direct and proximate result of Aargon's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>**
**(as to Experian only)**

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

86.     Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

87.     Experian willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the erroneous Account.

88.     Specifically, Experian reported *at least* two (2) erroneous collection accounts that did not belong to Plaintiff, and instead, belonged to a third-party.

89.     Such reporting is false and evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

90.     Furthermore, despite receiving Plaintiff's First Dispute—which clearly notified Experian that the two (2) collection accounts did not belong to Plaintiff and instead belonged to Plaintiff's father—Experian *still* failed to identify its reporting errors, purportedly "verified" its reporting of the Aargon Account, and *continued* to maintain and publish Plaintiff's Experian credit reports including the erroneous

Aargon Account.

91.     Experian's conduct constitutes a knowing and willful decision to report erroneous information belonging to a third-party on Plaintiff's consumer credit reports, as the above-referenced erroneous information unequivocally indicates a mixed credit file between Plaintiff and a third-party, clearly demonstrating that such information should not have been reported on Plaintiff's credit reports.

92.     Experian's publishing of Plaintiff's highly sensitive and personal information to third-parties without a right or need to know such information increases the risk of identity theft and is the exact type of harm the FCRA is designed to protect.

93.     As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Experian's derogatory and continued reporting of the Account, did not wish to further damage his credit scores with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account that was not his.

94.     Furthermore, Plaintiff suffers ongoing actual damages because he fears that Experian will again allow information to appear on Plaintiff's credit reports in the future that does not belong to Plaintiff, as Experian has already done on multiple occasions.

95.     Experian's conduct was a direct and proximate cause of, as well as a

substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

96.     Experian's violations of 15 United States Code, Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTIONS 1681i(a)(1), 1681i(a)(4), and i(a)(5)**
**(as to Experian only)**

Plaintiffs re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

97.     Experian is subject to, and violated the provisions of, 15 United States Code, Sections: 1681i(a)(1) by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

98.     Specifically, Experian willfully and/or negligently refused to properly re-

investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

99.     Overall, Plaintiff's multiple disputes provided Experian with sufficient information allowing Experian to identify that the Account did not belong to Plaintiff and should be removed from Plaintiff's credit reports and files.

100.    Experian did not request any documents from Aargon corroborating information furnished and verified by Aargon in response to Plaintiff's First Dispute.

101.    Notably, following Plaintiff's First Dispute, Experian and/or Ability Recovery Service deleted a collection account furnished by Ability Recovery Service, based on the same exact letter, and Experian sent dispute results to Plaintiff communicating that the Ability Recovery Service account was deleted.

102.    Further, following Plaintiff's second dispute, Experian and/or Aargon deleted the Aargon Account from Plaintiff's Experian credit reports, showing that Experian could have and should have identified that the Aargon Account also did not belong to Plaintiff and should have also deleted the Aargon Account following Plaintiff's First Dispute.

103.    Instead, Experian continued to report the Account in Plaintiff's credit report and file as belonging to Plaintiff with a significant past-due balance in the amount of $3,480.

104.    given that Plaintiff did not initiate the services that created the Account and did not authorize any person to initiate the Account on his behalf or in his name,

and given that Experian did not request any documents from Aargon supporting the furnisher's reporting of the Account, Experian could not reasonably verify that Plaintiff was personally responsible for the Account.

105.    As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and as such Experian failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

106.    Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's First Dispute.

107.    Experian's reinvestigations of Plaintiff's First Dispute disputes were not conducted reasonably.

108.    Experian's reinvestigations merely copied and relied upon the inaccurate information conveyed by Aargon.

109.    Experian's reinvestigations of Plaintiff's First Dispute were not conducted in good faith.

110.    Experian's failure to review and consider all information received in Plaintiff's First Dispute was done in bad faith.

111.    Experian's reinvestigation procedures are unreasonable.

112.    Experian's re-investigations of Plaintiff's First Dispute were not conducted using all information reasonably available to Experian.

113.    Experian's reinvestigations were *per se* deficient by reason of these failures

in Experian's reinvestigations of Plaintiff's disputes.

114.    As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Experian's derogatory and continued reporting of the Account, did not wish to further damage his credit scores with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account that was not his.

115.    Furthermore, Plaintiff suffers ongoing actual damages because he fears that Experian will again allow information to appear on Plaintiff's credit reports in the future that does not belong to Plaintiff, as Experian has already done on multiple occasions.

116.    Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

117.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment against Aargon for maximum statutory damages under the FDCPA;

b. Judgment against Defendants for maximum statutory damages for violations of the FCRA;

c. Actual damages in an amount to be determined at trial;

d. Compensatory damages in an amount to be determined at trial;

e. Punitive damages in an amount to be determined at trial;

f. An award of attorney's fees and costs; and

g. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
Sean E. McEleney, Esq., FBN 125561
11300 4th Street North, Suite 260
St. Petersburg, FL  33716

Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*